## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 19-20294

United States Court of Appeals
Fifth Circuit

**FILED**
June 9, 2020

Lyle W. Cayce
Clerk

CARLA WEST,

      Plaintiff - Appellant

v.

CITY OF HOUSTON, TEXAS,

      Defendant - Appellee

Appeal from the United States District Court
for the Southern District of Texas

Before SMITH, HO, and OLDHAM, Circuit Judges.

PER CURIAM:

Carla West appeals an adverse summary judgment entered on her claims against her employer, the City of Houston, for discrimination and creating a hostile work environment in violation of Title VII of the Civil Rights Act of 1964. We affirm.

**I.**

West, an African American woman, began her tenure with the Houston Fire Department in 1994 when she enrolled in Houston's Fire Academy. She failed the Academy's graduation test, which she now alleges was administered in a discriminatory manner, and was fired. The Department eventually rehired West. And two years after failing the Academy's graduation exam, she

passed and joined the Department as a firefighter. While working for the Department, West trained to become a paramedic. After completing her training, the Department promoted West to the role of engineer/operator paramedic at Station 9.

At Station 9, West took issue with her fellow firefighters' behavior. Her colleagues would tell jokes to one another that she found inappropriate, including jokes about "men's testicles." They passed gas, burped, and occasionally grabbed their private parts at the dinner table. They brought adult magazines to the station and left them in common spaces. They also posted inappropriate pictures on the station walls, including some racially derogatory photographs. West also twice complained about seeing her coworkers sleeping at the station in their underwear. And in one instance, one of West's subordinates threw a medical bag at her. In response to these behaviors, West isolated herself from her coworkers.

In addition to finding fault in her coworkers and subordinates, West alleged that her station superiors denied her overtime opportunities because of her race and sex.

Two types of overtime decisions are made at the station level: holdover and ride-up. Holdover overtime occurs when a captain "holds over" an employee from the outgoing shift to fill an unanticipated vacancy on the incoming shift. This type of overtime is not meant to last an entire shift. Instead, it merely serves as a stopgap to fill an unexpectedly vacant position until a volunteer overtime employee assigned by the Department can arrive. The second type of station-level overtime is ride-up overtime, which occurs when an individual ranked directly beneath an absent employee fills that vacant position.

No. 19-20294

West claims that she rarely received those overtime opportunities despite asking for them.  Instead, she insists that her station supervisors would select her white, male colleagues for overtime.

West transferred from Station 9 in 2010, but prior to her transfer, she filed a discrimination charge with the Equal Employment Opportunity Commission alleging that she was subjected to a hostile work environment and discriminated against due to her race and sex.  The EEOC issued a right-to-sue letter on those charges, and West filed this action in federal court.  The district court, after receiving a report and recommendation from the magistrate judge, adopted the report and granted summary judgment to the city.

## II.

This court reviews grants of summary judgment de novo.  *Petzold v. Rostollan*, 946 F.3d 242, 247 (5th Cir. 2019).  Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  While we review the evidence in the light most favorable to the nonmoving party, "conclusional allegations and unsubstantiated assertions may not be relied on as evidence by the nonmoving party."  *Carnaby v. City of Houston,* 636 F.3d 183, 187 (5th Cir. 2011).

## A.

Title VII protects employees against race and sex discrimination in the workplace.  42 U.S.C. § 2000e-2(a).  To demonstrate a prima facie case of employment discrimination, West must show that she (1) belongs to "a protected class"; (2) "was qualified for the position"; (3) experienced "an adverse employment action"; and (4) was "similarly situated" to other employees who were not members of her protected class and who "were treated more favorably."  *Bryan v. McKinsey & Co., Inc.*, 375 F.3d 358, 360 (5th Cir. 2004).

No. 19-20294

As the district court found, West cannot establish a genuine dispute of material fact regarding the fourth prong. We have defined "similarly situated" narrowly, requiring the employees' situations to be "nearly identical." *Wheeler v. BL Dev. Corp.*, 415 F.3d 399, 406 (5th Cir. 2005) (quoting *Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1090 (5th Cir. 1995)). Employees are similarly situated when they (1) "held the same job or responsibilities," (2) "shared the same supervisor or had their employment status determined by the same person," and (3) "have essentially comparable violation histories." *Lee v. Kan. City S. Ry. Co.*, 574 F.3d 253, 260 (5th Cir. 2009) (footnotes omitted).

West identifies three individuals as potential comparators: Robert Allen, Robert Haynes, and Michael Chandler. Each is a white male working the same shift and at the same station as she did between 2007 and 2010. West argues that she was treated less favorably than those men when station-level supervisors assigned holdover and ride-up overtime.

First, regarding her holdover overtime, West's proffered evidence fails to show that her station-level supervisors treated her less favorably than her white, male comparators. In fact, it shows that West received more favorable treatment than Allen and Chandler. During the period in question, West's supervisor held her over three times for a total of 3.25 hours. Allen and Chandler were both held over only once, and worked 1.0 and 1.5 overtime hours, respectively.

Then there is Haynes. Haynes and West received an equal number of holdover opportunities—three. But Haynes received 16.75 hours of holdover overtime, while West received only 3.25 hours. West insists that the difference in hours shows that she received less favorable treatment. But that misconstrues the nature of holdover overtime. Station-level supervisors use holdover overtime to fill unexpected, last-minute absences until a replacement arrives. They have no discretion to decide the length of the overtime

4

assignment.   Rather, the hours depend entirely on when the volunteer replacement arrives.   Because station-level supervisors cannot control the number of hours worked on a holdover assignment, West cannot use a discrepancy in such hours to demonstrate that she received less favorable treatment than Haynes.

Regarding ride-up overtime, West's allegations fail because neither Allen, Haynes, nor Chandler (1) "held the same job or responsibilities" or (2) "shared the same supervisor" as West.  *Lee*, 574 F.3d at 260 (footnotes omitted).

Allen, Haynes, and Chandler worked as fire suppression engineer/operators.  They were responsible for driving the pumper truck or ambulance at Station 9.  As an engineer/operator paramedic, West drove the "squad unit"—a smaller emergency medical vehicle.  And as a paramedic, West had to possess certain medical knowledge that fire suppression engineer/operators did not.   Those differences make fire suppression engineer/operators and engineer/operator paramedics too different to be valid comparators.  *See Morris v. Town of Independence*, 827 F.3d 396, 402 (5th Cir. 2016) (noting that a difference in "job functions" was a factor in determining that plaintiff was not similarly situated to her proffered comparator).

Furthermore, West and her comparators had different supervisors deciding whether they would receive ride-up overtime work.  The proffered comparators' direct supervisor was the shift captain.  West's direct supervisor was the EMS captain. "Employees with different supervisors . . . generally will not be deemed similarly situated."  *Lee*, 574 F.3d at 259.

Accordingly, West failed to raise a genuine dispute of material fact regarding the fourth element of her discrimination claim.

## B.

Title VII also makes it unlawful for employers to require "people to work in a discriminatorily hostile or abusive environment."  *Gardner v. CLC of*

*Pascagoula, L.L.C.*, 915 F.3d 320, 325 (5th Cir. 2019) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)). "A hostile work environment claim is composed of a series of separate acts that collectively constitute one 'unlawful employment practice.'" *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 117 (2002) (quoting 42 U.S.C. § 2000e-5(e)(1)). To survive summary judgment on a hostile work environment claim based on race or sex discrimination, a plaintiff must show that (1) she is a member of a protected class; (2) she suffered unwelcomed harassment; (3) the harassment was based on her membership in a protected class; (4) the harassment "affected a term, condition, or privilege of employment"; and (5) "the employer knew or should have known" about the harassment and "failed to take prompt remedial action." *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002).

We agree with the district court that West failed to show a genuine dispute of material fact regarding the fourth prong of her hostile work environment claim—that the harassment affected a term, condition, or privilege of employment.[1]

"To affect a term, condition, or privilege of employment, the harassment must be sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Aryain v. Wal-Mart Stores Tex. LP*, 534 F.3d 473, 479 (5th Cir. 2008) (cleaned up). The alleged conduct must be objectively and subjectively hostile or abusive. *Harris*, 510 U.S. at 21–22. The totality of the employment circumstances determines

---

[1] West asks this court to consider as actionable the Department's administration of the 1994 graduation exam, which is time-barred under 42 U.S.C. § 2000e-5(e)(1), as part of her hostile work environment claim through the continuing violation doctrine. However, West makes no effort to demonstrate how the Department's 1994 actions and the actions of her coworkers thirteen years later were related and continuous, as required under the continuing violation doctrine. *See Stewart v. Miss. Transp. Comm'n*, 586 F.3d 321, 328 (5th Cir. 2009). Therefore, although we consider it as "relevant background conduct," the 1994 graduation exam is not actionable. *Ramsey*, 286 F.3d at 269.

whether an environment is objectively hostile. *Id.* at 23. Although no single factor is determinative, pertinent considerations are (1) "the frequency of the discriminatory conduct"; (2) "its severity"; (3) "whether it is physically threatening or humiliating, or a mere offensive utterance"; and (4) "whether it unreasonably interferes with an employee's work performance." *Id.*

First, West cannot show that her harassment was frequent or pervasive. She admits that a number of the complained-of actions were isolated or infrequent—such as when a subordinate threw a bag at her (once), when she discovered her fellow firefighters asleep in their underwear (twice), and when she saw her coworkers grab themselves at the dinner table (occasionally).

Regarding the other complained-of conduct, West provides no evidence of their frequency. The best she can do is claim that she meets this factor because her husband said she often complained to him about the presence of adult magazines at work. But frequently complaining about something does not mean it happened frequently. Without more, West cannot show the harassment was pervasive. *Compare Hockman v. Westward Commc'ns, LLC,* 407 F.3d 317, 328 (5th Cir. 2004) (finding that conduct was not pervasive when the plaintiff "did not even estimate how many times [the] conduct occurred"), *with Lauderdale v. Tex. Dept. of Criminal Justice, Institutional Div.,* 512 F.3d 157, 164 (5th Cir. 2007) (finding harassment pervasive when plaintiff received unwanted phone calls "ten to fifteen times a night for almost four months"), *and Farpella-Crosby v. Horizon Health Care,* 97 F.3d 803, 806 (5th Cir. 1996) (finding harassing conduct was pervasive when it was described as occurring "two or three times a week").

West also fails to meet the second and third factors: that the alleged actions were severe, physically threatening, or humiliating. *See Harris,* 510 U.S. at 23. Those factors "are sufficiently demanding to ensure that Title VII does not become a 'general civility code.'" *Faragher v. City of Boca Raton,* 524

No. 19-20294

U.S. 775, 788 (1998) (quoting *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998)).  West seeks to impose Title VII liability on her employer because her coworkers passed gas at the dinner table; infrequently slept in their underwear at the station; made the occasional racially insensitive joke; and brought adult magazines to the station.  That is not severe or humiliating under the governing standards.  *See Faragher*, 524 U.S. at 788 ("Properly applied, [the standards for judging hostility] will filter out complaints attacking 'the ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing.'") (quoting B. LINDEMANN & D. KADUE, SEXUAL HARASSMENT IN EMPLOYMENT LAW 175 (1992)); *Shepherd v. Comptroller of Pub. Accounts of the State of Tex.*, 168 F.3d 871, 874 (5th Cir. 1999) (finding harassment was not severe when a male coworker made comments to a female plaintiff about her private parts and intermittently rubbed plaintiff's arm).

Nor did anyone physically threaten West.  The closest incident was when a subordinate threw a bag at her.  But that is the type of "isolated incident[]" the Supreme Court has cautioned against finding actionable under Title VII.  *Faragher*, 524 U.S. at 788.

Finally, West has not shown that the harassment interfered with her work performance.  She pointed to no evidence that her coworkers' actions "destroy[ed]" her "opportunity to succeed in the workplace."  *Weller v. Citation Oil & Gas Corp.*, 84 F.3d 191, 194 (5th Cir. 1996).  In fact, she did not even allege that her fellow firefighters' actions "unreasonably interfere[d]" with her work performance.  *Harris*, 510 U.S. at 23.

In short, the most West has shown is that her colleagues were sometimes offensive and boorish.  But Title VII does not impose a "general civility code" on employers.  *Faragher*, 524 U.S. at 788 (quoting *Oncale*, 523 U.S. at 80).  The

No. 19-20294

district court did not err in granting summary judgment on West's hostile work environment claim.

## III.

For the reasons discussed above, we affirm the district court's grant of summary judgment.